Jack Fitzgerald, Appellant, Beverly Truxel v. Stephen Hadley Consumer Fraud Class Action Challenging Health and Wellness Claims on General Mills Cereals and Snack Bars Over the course of three years, the District Court issued three Rule 12 decisions. In the first two, in 2017 and 2018, the Court dismissed some individual label statements that plaintiffs challenged as either preemptive, puffery, or true, but it found plaintiffs' case theory was generally viable. Holding on page 5 of its 2018 order, quote, whether or not defendants' breakfast cereals and snacks are healthy and whether their health and wellness statements are falsely misleading are questions that cannot be resolved at a motion to dismiss stage. In its third decision in 2019, however, the Court changed its mind and held that plaintiffs' theory was an untenable application of the reasonable consumer standard. We contend on appeal that the Court erred in dismissing some individual claims in the first two orders and erred in dismissing the entire case under the reasonable consumer standard in the third order. There's lots of issues raised in the appeal, and given our limited time, I'm happy to address any particular issues the Court would like me to address first. Otherwise, I'll begin with the reasonable consumer standard and then move on to preemption and argue in the order of importance to us. I'm going to ask you a question right out of the gate related to the reasonable consumer standard. One of the things I'm struggling with here is your argument about deception relates to high sugar, you know, consuming too much sugar. Isn't that argument and whether sugar is healthy, isn't that a dietary-wide issue as opposed to a product-by-product issue? And doesn't that distinction distinguish many of the cases that have been cited here where the issue of whether it's true or deceptive or not can be product-based? I'm just struggling with how is healthy product-based when your argument is too much sugar? Well, I think you have to look at the label claims. So the label claims are affirmatively representing that this is a healthy food. They're not saying that it's possible to integrate this food into a healthy diet or giving full information, but it's giving an impression that this is a healthy food. And we argue that that impression is false and misleading. If it's false and misleading because you have to consider the whole diet, then I think what your argument or the question that your argument or your question presumes almost proves too much. If no food can be called healthy or unhealthy because you have to look at a full diet, then General Mills shouldn't be labeling its foods as healthy. But what I would say is that General Mills is misrepresenting our case theory when it says that we contend that reasonable consumers can't figure out how to integrate these products into a healthy diet. Now, a healthy diet is different than a healthy food. The concepts may sound similar, but they're different. I would give you that, and I think that there definitely are products where you could say at the product level, this is unhealthy. I mean, we've seen that in various things over time. Cigarette comes to mind, right? And at the product level, it doesn't matter how you use that product, it's unhealthy. But in this context, what is the rule that – I mean, we're judges. We figure out how to apply rules. What is the rule that tells us that the product is healthy or not? And if your argument is sugar consumption, then it has to be about how much – what's the cutoff of sugar in a product that makes it healthy or not? Yes. Well, what I would say is the standard that governs is the reasonable consumer standard, and the question is whether the representations are likely to mislead a significant portion of the population. What I think you have to do is decide on the best available scientific evidence. Is a product that contains 20 to 40 percent of its calories from added sugar fairly characterized as a healthy product, or is that characterization likely to mislead somebody? And, you know, we have the benefit – this is sort of an unusual situation in that we have the benefit of hindsight in these cases because two of the cases that were filed on the same day against Kellogg and Post – that's the Hadley case and the Cromenhawk case – those cases have proceeded and had quite a lot of success. In both cases, classes were certified in both cases. They obviously both survived the pleading stage with both judges' work and judges' co-finding that we had alleged sufficient science and sufficient misleading representations. They went past the pleading stage. Classes were certified in both cases. The classes survived the defendant's summary judgment motions in both cases. In the Hadley case, the class won summary judgment, establishing Kellogg's liability on misbranding claims, and Kellogg after that entered into a very substantial settlement in which it agreed to pay monetary compensation and also remove or change a lot of the claims. I would argue that these results would be astounding if they were based on a case theory that was implausible as a matter of law. You know, in Twombly, the Supreme Court said that the plausibility standard exists to avoid frivolous litigation or litigation that's likely to be frivolous. And in Iqbal, the Supreme Court said that the court in determining plausibility can draw on its judicial experience and common sense. Well, I would argue the fact that this exact case has proceeded through four years of litigation and the post-case is now set for trial, and if you read Judge Oreck's decision on class certification and summary judgment, you know, we submitted expert reports and the science, and I think we've clearly got evidence supporting our claims. We're over. I want to stop you and ask you a follow-up. Yes. When you just said that we can rely on common sense and our judicial experience, I'm still struggling with, and maybe you need to just point me to something in the record, what do I use, what metric do I apply to figure out if a product is on the unhealthy side of the line or on the healthy side of the line when it comes to sugar? Well, we've pleaded two metrics. The first is a 5% metric, and that's based on the American Heart Association's scientific statement, which itself is based on the scientific record, a lot of which is in the complaint. That's 5% of your caloric intake across the board? It's a 5% daily recommendation, and the FDA has a 10% daily recommendation, and I agree that that's not food-specific, but that doesn't mean that we can't apply the principles from that and the science from that to specific foods. I mean, there's one thing that's somewhat self-evident. If you want to stay below 5% of calories from added sugar or 10%, then you eat foods – if all day you eat foods that are less than 5% or 10% from added sugar, you're going to stay below that. What I would submit is that – How do you translate the dietary standard to a specific product? It's really just through the reasonable consumer standard. At the end of the day, a jury is going to take a look at this and say, in light of the product's nutritional profile and in light of the scientific evidence about what foods with high sugars do to us, is it fair for General Mills to be telling consumers that these are healthy cereals? I mean, you're asking me a question suggesting how can we ever call this an unhealthy cereal because of this diet issue, but I would say that the opposite is true. If we can't call it either unhealthy or healthy because we have to look at a full diet, then it's misleading for General Mills to be calling it healthy. But these types of cases have a long history of proceeding, including this court's decision in Reed v. Johnson & Johnson, where it held that health and wellness claims made on a butter substitute that contained trans fat were plausibly misleading. And the fact that trans fat was alleged to be an unhealthful nutrient made that plausible. And again, there's four cases, including two exactly on point below, that have found these allegations not just plausible and past the pleading stage, but we've got past summary judgment, judgment on the science, on the reasonable consumer standard. I just submit that we couldn't possibly have gotten those decisions out of those very studious judges if it had not been plausible that reasonable consumers could be misled by the assertion that a food is health. And when you have to start talking about mitigating the effect of the foods by eating other things that are healthier, that's a good indication that your food is not healthy. So, for example, if General Mills argues, well, our cereal is healthy because you can eat spinach the rest of the day and not exceed your sugar content level. Well, that doesn't make the sugar healthy. That makes it possible to mitigate its negative health effects. But what we allege in the complaint is that if you regularly eat these cereals, your risk for chronic illness will increase and increased risk of illness is that our illness is the opposite of health. So I think that there's a very clear cut theory here that's supported in the science. Even though policymakers make daily recommendations for daily intake, I will note that in the dietary guidelines, they say all food choices matter. So each individual food choice matters when putting together a healthy diet. And if you're looking at a cereal that's 20 or 30 or 40 percent of its calories from sugar and it's telling you that it's a healthy cereal for your family, well, that's a food choice that matters. And that's a misrepresentation. There is a case. I want to ask you one quick question. I don't want to take all your time, but there's information in the record from the FDA where they have seemingly said, well, you know, they're not setting a standard for what the percentage is. And they recognize that sweeteners and cereal and a few other products could be fine. I mean, you may disagree with that, but what are we as the court supposed to do with that information from the FDA? What role should that play in our decision? Well, two things I would say is, number one, if you look at the entire FDA record, it absolutely supports our side of this controversy. And that's what Judge Oreck found recently. But if you look at it, I think there's certainly statements that support ours. And the statements that they're citing, I think, are taken out of context. But we're at the pleading stage, and certainly things FDA has said are relevant. But as Judge Seaborg said many years ago, and Henry Quaker wrote, there's no reason to believe at a motion-to-dismiss stage that the FDA is so infallible that it's impossible to believe that consumers could be misled by statements that sugary foods are healthy. And while General Mills may be able to use the FDA's pronouncements in support of his defense, and indeed, we intend to use its pronouncements in support of our case, those are issues of fact that have to be resolved after further factual development. I don't think on the pleadings that a decision can be based on the FDA statements alone, especially when we plead the science. Now, just before my time, before I save some time for rebuttal, I do want to point the case, the court, to one case that was not in our briefs. And I told Mr. Sipos I intended to cite this out of fairness to him. The case is Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal 3rd, 197, 1983. It's a California Supreme Court case where the allegations were very similar to this case. It was Post's predecessor, General Foods Corp., and they were alleged to be making misleading health and wellness claims about sugary cereals on television, that they benefited children. And the lower court granted a demur, and the California Supreme Court overturned that, finding that it was a viable case theory. And I submit if you read the facts of that case, they're very similar, squarely on point here, the only difference being it was television advertising rather than label advertising. And with that, unless there's any other questions from the court, I'll reserve the remainder of my time. All right, thank you. Counsel, go ahead. Yes, good morning, Your Honors, and may it please the court. My name is Charles Sipos, and I'm here this morning on behalf of the defendant in Appalachia General Mills. Cereal is one of the most well-known foods in the grocery store. It's been around for decades, and so using nothing more than common sense, a reasonable consumer knows that sometimes cereal is sweetened with sugar. Here, consumers also knew that, because right on the front of every General Mills cereal at issue in this case, the company told consumers exactly how much sugar per serving was in the product. The labels also told consumers about the products, other nutrients, and ingredients that they contained, things like whole grains, fiber, vitamins, and minerals. And from this, a reasonable consumer had all the information they needed to decide how to incorporate these cereals into a healthy diet. And there is agreement. Cereal is part of a healthy diet. The chief piece of scientific literature relied on a plaintiff's own complaint concludes that when consumers eat cereal with added sugar, their overall dietary quality improves. The FDA, as you noted, Judge Hunsaker, has reached a similar conclusion. Nutrient-dense, whole-grain cereals with added sugar are part of an overall healthy diet. The district court's reasonable consumer analysis was correct for these reasons, and we ask that this court affirm. Now, because the reasonable consumer issue is dispositive of the appeal in its entirety, I want to focus my remarks this morning on that aspect of the law and address two key points. First, I want to explain why the plaintiffs' theory that they were deceived about the products' healthfulness is not tenable under the reasonable consumer standard. And second, I will speak to you very briefly why their reliance on the Williams decision is misplaced based on the admitted facts in this record. So let me start by addressing their theory of deception. So the plaintiff's basic theory is that reasonable consumers were deceived about General Mills cereal's healthfulness. I think this is largely addressed by two principles that can be distilled from this court's reasonable consumer cases. The first is reasonable consumers are presumed to act reasonably under the circumstances. That comes right out of Levy and is cited in this court's Becerra and Ebda decisions. And that principle of law bears on your questions, Judge Hunziker. To be clear, your characterization of the complaint is correct. The plaintiff's theory of deception with respect to our products is not that our products per se are unhealthy. It's that when consumed as part of a total diet, they result allegedly in some negative health outcomes. But that theory of deception depends on the notion that a reasonable consumer is unable to balance the incorporation of these cereals into their diet. And that simply is not plausible when measured against this court's reasonable consumer precedents. The Becerra case in particular stands for the proposition that reasonable consumers are presumed to know the basics of diet, things like total caloric intake has to be monitored for weight loss. And the same thing is true here. Reasonable consumers know that an overall healthy diet is the function of a balance of a variety of foods. The second basic principle that can be distilled from the court's reasonable consumer cases is that So that's been determined with respect to things like lip balm, diet soda, ice lattes. And here the product under consideration is cereal. Now, cereal is something that's been around for decades. It is an unchallengeable fact. Even plaintiff's own complaint points to cereals introduced as far back as the 1940s. And so a reasonable consumer goes into the grocery store with some preexisting knowledge of what cereal is. And here, in light of the nature of the allegations, that understanding gets us a step further because not only do consumers have an understanding of the product, but there's a basic understanding that cereal is eaten for breakfast. And the necessary implication of that is it's just one food to be balanced with the remainder of your diet throughout the day. So both of those principles of reasonable consumer law cast doubt on, render implausible the plaintiff's theory of deception. Now, the plaintiff's response to this is, well, that's an issue of fact. Whether or not these labels are deceptive is an issue of fact. But if you look at some of the representations on the labels in light of these principles, no reasonable consumer takes from a reference to whole grains or a reference to wholesome goodness that they can ignore the rest of what they've been told about the cereal's nutrients, including sugar, or that they're then free to disregard how to incorporate it in the rest of their diet. So the plaintiff's next response here is, well, that's a fact issue. Whether or not plaintiffs have been deceived in this fashion is a fact issue. But it is not when you consider the relevant legal standard and then use that standard as a yardstick to evaluate the plaintiff's complaint. So the standard here is whether or not it's probable that a significant portion of the consuming public acting reasonably under the circumstances would be deceived. And I know that's a mouthful, but probable, significant portion, acting reasonably. I want to ask you a question. Are you disputing that the messages on the packages that have been challenged in this litigation are attempting to communicate to the customers that these are healthy products? Do you dispute that? Your Honor, we do not dispute that the plaintiffs have plausibly alleged that. And we don't need to because our position is that cereals are healthy. But the fact that they say that the cereals communicates that message doesn't get them nearly far enough in light of what they've actually alleged as to their theory of deception. So your argument is really about deception and not about what it is that the plaintiffs are saying is the effect of these messages. That's correct, Your Honor. But, of course, the effect of those messages has to be measured in context with everything else we say on the label as well as considered in light of the relevant legal standard and then placed in the context of what the plaintiffs have alleged. And let me speak to that exact issue because I think if you examine the complaint, you can see that they have alleged a plausible set of facts to support that theory of deception. Now, the plaintiffs very expressly allege that this is a widespread pattern in practice by General Mills of labeling and that the deception will result in negative health outcomes. But there is not a single instance pointed to in the complaint of anyone having experienced those negative health outcomes as a result of eating General Mills cereal. And I know this is not a personal injury case, but to be clear, their theory of deception is tied to that outcome. And so it bears on the plausibility of the allegations that that outcome has never occurred. I want you to address an argument that the plaintiffs' counsel raised. So if I'm struggling with what is the metric, how do I figure out what's healthy and what's not at the product level? And his argument is, well, even if you can't figure that out, it's deceptive to say you're healthy because you can't actually show that. If there's no metric to say this is healthy and this is not, how can you claim one or the other? How do you respond to that? Well, two points, Your Honor. The metric for consumption of added sugar is 50 grams per day, which is the baseline that's been established by the FDA. And none of the cereals come even close to that number. But beyond that, the issue of whether or not the product is healthy or unhealthy has to be evaluated by, one, what we communicate on the product's labels as to the product's overall nutritional content. And, two, will a reasonable consumer be able to take account of that information and incorporate it into their diet? And the answer to both those questions is a reasonable consumer can do so. I want to return to the idea that the plaintiff's theory of deception here is tied to total diet in terms of added sugar consumption, not an individual food. As I mentioned earlier, the complaint plainly alleges that what's harmful here is the potential for added sugar consumption as a function for total diet. But, again, that result only obtains if you assume, contrary to law, that a reasonable consumer would consume these foods without taking regard of their overall dietary intake. And that is just not an inference that the plaintiffs are warranted under the case law. Finally, let's look at what the complaint actually alleges with respect to cereal. So there is a lot of science in the complaint. But the only science that speaks to the issue of cereal is a 2009 article from the AHA. And we're not cherry-picking this article. This is, I think, fairly characterized as one of the cornerstones of the plaintiff's complaint. And what that article concludes twice is that cereal without a sugar is healthy. It says, first, that when consumers eat cereal without a sugar, their overall dietary quality improves. And, second, it says that when consumers eat cereal without a sugar, that's beneficial because of all the positive nutrients that go along with a bowl of cereal. The vitamins, the fiber, the minerals, all those things are nutrients that are conveyed when you eat a bowl of cereal. And on that exact point, that's why the AHA and FDA are in agreement. I mean, the FDA's conclusions about why nutrient-dense whole-grain cereals without a sugar are healthy, it's implied by the first two words of that statement, which is these are nutrient-dense foods that provide beneficial nutrients. And so when you consider that in light of the other failings on their theory of deception, that also renders their complaint implausible. Now, finally, let me briefly address, in dealing with the complaint, the rest of the science. None of the remaining science cited in the complaint said anything about health effects of consuming cereal without a sugar. And this is a point we've pressed below and that we pressed on appeal, and the plaintiffs have no answer. And this is not – I don't think any jurist would characterize this as an abridged complaint. It's 123 pages, 369 paragraphs. So they plainly have scoured the scientific record, and yet there is not a single piece of evidence that they allege bears on cereal. So, Your Honor, let me – but before I turn to the Williams decision, I want to briefly address one point that the plaintiff, that Mr. Fitzgerald made, with respect to the other decisions that have been rendered. So let me say this, and the decisions by Judge Koh and Judge Orrick. The application of the reasonable consumer standard to the plausibility of the complaint is a question of law, and so it's one that this Court can address. And the fact that district courts have decided the issue just differently is no reason not to address it or not to affirm. I point the Court, for example, to the Painter v. Blue Diamond decision, which is one of the cases cited in our briefs. If you look at the briefing in that case, the plaintiff made the exact same argument, that, well, there's this disagreement among the district courts as to whether or not our theory is plausible. But that's no reason not to apply the proper legal rule and to affirm. And I'll pause and say one more thing, which is that, of course, Judges White and Judge Alsup, in the Clark decision, ruled in a fashion consistent with our position. And Judges White and Judges Alsup were not writing on clean slates with respect to the reasonable consumer standard. I mean, two of the cases we cite in footnote 5 of our brief are affirmances of decisions by Judge White in Correa v. Dreier's Ice Cream and Judge Alsup in Manshook v. Mondelez of reasonable consumer dismissals. Let me briefly, with my remaining time, Your Honor, turn to the Williams decision and explain why it is no barrier to affirmance here. So I think at the highest level of generality, the plaintiffs are relying on Williams to argue that because this is Rule 12 and because we say there are disputed facts, you must reverse. But that's plainly wrong. If you look at footnote 5 on page 21 of our brief, we cite 17 instances, all post-Williams, where this court has affirmed district court dismissals on reasonable consumer grounds. So Williams does not serve as any kind of generalized barrier to affirmance here. Second, they cite Williams, although I think fleetingly in light of some of the concessions in their reply brief, for the proposition that the reasonable consumer wouldn't be charged with understanding or having taken account of everything on our serialist labels. My first response there is that's really an issue I think that has been pled away by the admitted facts. I mean, if you look at 2 ER 179 paragraph 287, the plaintiffs allege that they reviewed the labels in full, and, of course, reviewing the labels in full means seeing all the information that General Mills provided on nutritional content. And so I think that really disposes of the plaintiffs' remaining reliance on Williams. Your Honors, if there are no further questions, I'll conclude by saying this. The reasonable consumer standard serves as an important backstop to implausible and unwarranted consumer protection cases, and applying that principle here should result in affirmance, and we ask that the court do so. Thank you. Thank you, counsel. Mr. Fitzgerald, I think you have a little bit of time left. Yes, thank you. So the first thing I'll say is that the reasonable consumer has never been charged with having a detailed understanding of nutrition science. In Reed v. Johnson & Johnson, this court affirmed a plausibility case based on the presence of trans fat and noted that Reed had contended that he's a lay consumer with no background in nutrition food science. In any event, plaintiffs plead in paragraphs 290 and 319 of the Third Amendment Complaint, for example, that at the time of purchase, they were unaware of the extent to which consuming high amounts of added sugar in any form adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity, or what amount of sugar might have that effect. You have to remember, this case, the class period goes back to 2012, and what's in the public knowledge today of nutrition science wasn't there necessarily then, but plaintiffs have pleaded, and the district court was obligated to accept as true, that they weren't aware of the ramifications of eating sugar. So even if they were required to look at the nutrition list and the nutrition facts to see the sugar info, that wouldn't have corrected the misimpression. The other thing I want to do is point the court toward Walters v. Vitamin Shop Industries. General Mills' argument is plaintiffs and other consumers should have seen the sugar in the context of all the other nutrients and made their decision about whether General Mills' statements that the products were healthy were true. But what Walters says is, yes, Your Honor? I understand that argument, and it makes sense, but isn't that true of any product that adds sugar then? I mean, there's nothing unique about the argument that you're making that's specific to cereal. You're making this argument, and it could apply to anything that has added sugar. Anything that has a high proportion of added sugar and represents itself to be healthy, and I'll tell you that there's not a lot of things that do that. There's not a lot of junk food that represents itself to be healthy. Candy bars aren't out there calling themselves healthy for your family or heart healthy. The arguments about the daily versus product, we won that argument on summary judgment when Post raised it on summary judgment, so I would just ask the court to look at Judge Orrick's decision on summary judgment on that. All right. Thank you, counsel, for your helpful argument. This case will be submitted, and that completes the docket for the day. Thank you. Thank you, Your Honor. This court for this session stands adjourned.
judges: Tashima, Selna, Hunsaker